UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SIDELINES BEER HOUSE LLC,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**ERIE INSURANCE EXCHANGE,**<br><br>Defendant. | Case No.: 2:20-cv-1246 |

### CLASS ACTION COMPLAINT

Plaintiff, SIDELINES BEER HOUSE LLC ("Plaintiff") files this Class Action Complaint, individually and on behalf of all others similarly situated, against Defendant, ERIE INSURANCE EXCHANGE, alleging as follows:

### NATURE OF THE CASE

1. This is a civil class action for declaratory relief and breach of contract arising from Plaintiff's contracts of insurance with the Defendant.

2. At the direction of local, state, and/or federal authorities, Plaintiff was forced to temporarily suspend its dine-in and bar service at its restaurant beginning on March 16, 2020, causing an interruption to and loss of Plaintiff's business income. The business was permitted to reopen at 50% capacity beginning on June 5, 2020, only to be ordered to close again on July 10, 2020. Starting on July 24, 2020, operations were permitted to resume, but only at 25% capacity, which continues to date.

3. Plaintiff and the Class purchased and paid for "all-risk" Commercial Property Coverage insurance policies from Defendant, which provide broad property insurance coverage for all non-excluded, lost business income, including the losses asserted here.

4. Plaintiff submitted timely notice of its claim to Defendant, but Defendant has refused to provide the purchased coverage to its insured, and has denied Plaintiff's claims for benefits under the policy.

5. Defendant has similarly refused to, or will refuse to, honor its obligations under the "all-risk" policy(ies) purchased by Plaintiff and the other members of the putative Class of insureds.

## PARTIES

6. Plaintiff SIDELINES BEER HOUSE, LLC is a Pennsylvania limited liability company and operates a restaurant located at 518-520 Locust Plaza, Sewickley, Allegheny County, Pennsylvania 15143 (the "Covered Property"). Plaintiff is resident and citizen of Pennsylvania.

7. Defendant ERIE INSURANCE EXCHANGE is a corporation with its principal place of business in Erie, Pennsylvania and is a citizen of Pennsylvania.

## JURISDICTION

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

9. The Court has personal jurisdiction over Defendant because Defendant maintains their principal place of business in this District.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## FACTUAL BACKGROUND

### Plaintiff Purchased "All-Risk" Policies of Property Insurance That Broadly Provide Coverage for Loss of Business Income, Among Other Things

11. Plaintiff purchased a contract of insurance from Defendant, whereby Plaintiff agreed to make payments (in the form of premiums) to Defendant in exchange for Defendant's promise to indemnify Plaintiff for losses at the Covered Property, including, but not limited to, business income losses.

12. Plaintiff's contract of insurance with Defendant bears the Policy Number Q971291021 (the "Policy"), which is effective for the period of May 4, 2019 to May 4, 2020 ("Policy Term"). The Policy is attached hereto as **Exhibit A**.

13. Plaintiff paid all premiums owed to Defendant under the Policies, and Defendant accepted all such premiums from Plaintiff.

14. The Policy is a form policy issued by Defendant.

15. The Policy is an "all-risk" policy, which provides the broadest property insurance coverage available.

16. The Policy provides coverage for "direct physical 'loss' of or damage to Covered Property . . . caused by or resulting from a peril insured against." "Covered Property" is defined in the Policy as Plaintiff's business location located at 518-520 Locust Plaza, Sewickley, Pennsylvania 15143.

17. The Policy defines "loss" as "direct and accidental loss of or damage to covered property."

18. The Policy does not define the phrase "direct physical loss of or damage to . . . ."

19. However, the use of the disjunctive "or" in the phrase "direct physical loss of or damage to" means that coverage is triggered if <u>either</u> a physical loss of property <u>or</u> damage to property occurs. The concepts are separate and distinct and cannot be conflated.

20. Physical loss of, or damage to, property may be reasonably interpreted to occur when a peril inured against threatens or renders property unusable or unsuitable for its intended purpose or unsafe for normal human occupancy and/or continued use.

21. The Policy provides Plaintiff with, *inter alia*, various income protection and extra expense coverages during the Policy Term.

22. Under the Policy, Defendant agrees to pay: **"loss of 'income' and/or 'rental income' you sustain due to partial or total 'interruption of business' resulting directly from 'loss' or damage to property on the premises described in the 'Declarations' from a peril insured against."** The premises described in the Declarations is the Covered Property.

23. Additional coverage is provided under the Policy for business income losses resulting from an "action of civil authority" which prohibits access to the Covered Property, related to a "peril insured against" at property other than the Covered Property: **"When a peril insured against causes damage to property other than property at the premises described in the 'Declarations', we will pay for the actual loss of 'income' and/or 'rental income' you sustain . . . caused by action of civil authority that prohibits access to the premises described . . . ."**

24. Members of the Class also purchased a policy of insurance from Defendant providing for the same income protection coverage, and using the same form policy provisions.

**In Response to COVID-19, Pennsylvania and Other State Governments Issue Sweeping Orders Shutting Down "Non-Essential" Businesses**

25. Severe acute respiratory syndrome coronavirus 2 ("COVID-19") has spread, and continues to spread, rapidly across the United States and has been declared a pandemic by the

4

World Health Organization. *See* https://www.health.harvard.edu/diseases-and-conditions/coronavirus-resource-center (last accessed July 31, 2020).

26. The global COVID-19 pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials for many days.

27. According to a study published in *The New England Journal of Medicine*, COVID-19 is widely accepted as a cause of real physical loss and damage. It remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last accessed July 31, 2020).

28. Another study, published in the *Journal of Hospital Infection*, found: "Human coronaviruses can remain infectious on inanimate surfaces at room temperature for up to 9 days. At a temperature of 30°C or more the duration of persistence is shorter." *See* https://www.inverse.com/science/coronavirus-4-studies-explain-how-covid-19-sticks-to-surfaces (last accessed July 31, 2020).

29. On March 6, 2020, the Governor of Pennsylvania declared a "Disaster Emergency" throughout the Commonwealth of Pennsylvania.[1] Thereafter, on March 19, 2020, the Governor of Pennsylvania issued an Executive Order closing all non-essential businesses, including Plaintiff's business. Specifically, the Executive Order, which became effective immediately upon its issuance, mandated that:

> No person or entity shall operate a place of business in the Commonwealth that is not a life sustaining business regardless of whether the business is open to members of the public.[2]

---

[1] https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf

[2] Governor Wolf, "Order of the Governor of the Commonwealth of Pennsylvania Regarding the Closure of All Businesses that are not Life Sustaining," (Mar. 19, 2020)

30.     The Executive Order continued the dine-in prohibition for restaurants and bars.

31.     On March 23, 2020, the Governor of Pennsylvania issued a Stay at Home Order for all residents of the Commonwealth of Pennsylvania, mandating that residents stay home "except as needed to access, support, or provide life-sustaining business, emergency, or government services."[3]

32.     Also on March 23, 2020, the Pennsylvania Department of Health issued a Stay at Home Order, directing all individuals residing in the Commonwealth to remain at home.[4]

33.     On May 3, 2020, the Governor of Pennsylvania announced a plan to reopen certain counties within the Commonwealth, transitioning such counties to "yellow" by May 15, which allowed low-risk businesses such as Plaintiff's to open.[5] Allegheny County, where Plaintiff's business is located, was transitioned to "yellow" on May 15.

34.     On July 8, 2020, the Allegheny County Health Department (the county where Plaintiff's business is located) issued an order indicated that COVID-19 is a "nuisance that must be abated" and that there was an increase of cases that was attributable to crowded conditions at bars, restaurants, and large gathers where alcohol is served.[6] The Order prohibited all "indoor dining or alcohol consumption at bars, restaurants, or any other business establishments in

---

https://www.governor.pa.gov/wp-content/uploads/2020/03/20200319-TWW-COVID-19-business-closure-order.pdf ("Executive Order").

[3]     Governor Wolf, "Order of the Governor of the Commonwealth of Pennsylvania For Individuals to Stay Home," (Mar. 23, 2020), https://www.governor.pa.gov/wp-content/uploads/2020/03/03.23.20-TWW-COVID-19-Stay-at-Home-Order.pdf.

[4]     https://www.governor.pa.gov/wp-content/uploads/2020/03/03.23.20-SOH-Stay-at-Home-Order.pdf

[5]     https://www.publicsource.org/allegheny-yellow-phase-news/

[6]     Order of the Director of the Allegheny County Health Department to Help Prevent the Spread of COVID-19, (July 8, 2020), https://www.alleghenycounty.us/uploadedFiles/Allegheny_Home/Health_Department/Resources/COVID-19/Docs/ACHD%20COVID-19%20Control%20Measure%20Order%207-8-2020.pdf

Allegheny County," limiting the manner of outdoor service, and requiring any outdoor seating to cease by 11:00 p.m.

35. Due to an increase in COVID-19 cases, on July 15, 2020, Governor Wolf issued an Order Directing Targeted Mitigation Measures, reinstating certain restrictions on, amongst other things, bars, restaurants, nightclubs, and fitness centers.[7] For restaurants, the Order provides that restaurants operating indoors may only do so at 25% capacity.[8] This Order further mandated that all businesses are required to conduct their operations remotely, "[u]nless not possible."[9] There is no expiration date on this Order.

36. Most other states, including those in which the putative Class members reside and/or do business, have issued similar compulsory shut-down orders for "non-essential" businesses, or businesses deemed not to be "life sustaining."

37. The closure of all "non-life-sustaining businesses" evidences an awareness on the part of both state and local governments that COVID-19 causes loss of or damage to property. This is particularly true in places where business is conducted, as the contact and interaction necessarily incident to such businesses causes a heightened risk of the property becoming contaminated.

38. For example, a New York City Executive Order entered on March 16, 2020 specifically acknowledged that: "[COVID-19] physically is causing property loss and damage." *See* https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-100.pdf (last accessed July 31, 2020).

39. Similarly, in a March 16, 2020 proclamation, the City of New Orleans acknowledged COVID-19's "propensity to attach to surfaces for prolonged periods of time,

---

[7]    https://www.governor.pa.gov/wp-content/uploads/2020/07/20200715-TWW-targeted-mitigation-order.pdf
[8]    *Id.*
[9]    *Id.*

thereby spreading from surface to person and causing property loss and damage in certain circumstances." *See* https://nola.gov/mayor/executive-orders/emergency-declarations/03162020-mayoral-proclamation-to-promulgate-emergency-orders-during-the-state-of-emergency-due-to-co/ (last accessed May 6, 2020).

40. In upholding the Governor of Pennsylvania's Proclamation of a state-wide disaster and the Executive Orders mandating the closure of businesses within Pennsylvania, the Pennsylvania Supreme Court noted the significant risk of the spread of the COVID-19 virus, even in locations where the disease has not been detected:

> Covid-19 does not spread because the virus is "at" a particular location. Instead it spreads because of person-to-person contact, as it has an incubation period of up to fourteen days and that one in four carriers of the virus are asymptomatic. Respondents' Brief at 4 (citing Coronavirus Disease 2019, "Symptoms," CDC, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last accessed 4/9/2020)). The virus can live on surfaces for up to four days and can remain in the air within confined areas and structures. *Id.* (citing National Institutes of Health, "Study suggests new coronavirus may remain on surfaces for days," (Mar. 27, 2020) https://www.nih.gov/news-events/nih-research-matters/study-suggests-new-coronavirus-may-remain-surfaces-days (last accessed 4/9/2020) and Joshua Rabinowitz and Caroline Bartman, "These Coronavirus Exposures Might be the Most Dangerous," The New York Times (Apr. 1, 2020) https://www.nytimes.com/2020/04/01/opinion/coronavirus-viral-dose.html).

*Friends of DeVito v. Wolf*, 227 A.3d 872, 891 (Pa. 2020).

41. Because the COVID-19 virus can survive on surfaces for up to fourteen days, the Pennsylvania Supreme Court ultimately concluded that "any location . . . where two or more people can congregate is within the disaster area."

42. Further, the World Health Organization ("WHO") has indicated that airborne transmission, "particularly in specific indoor locations, such as crowded and inadequately ventilated spaces" poses a significant risk.[10]

---

10   https://apnews.com/648feb226473f9841920abd6ffb004c7

43. The CDC has warned that exposure to an individual with COVID-19 for fifteen minutes or more, or close contact within six feet of distance, is enough to justify a personal quarantine.[11]

44. Experts believe that "a second wave" of COVID-19 cases will occur in the fall and winter of 2020, coinciding with the flu season. As Dr. Robert Glatter, emergency physician at Lenox Hill Hospital in New York City stated: "[the second wave] will likely be worse than the initial wave we experienced this spring."[12]

**Plaintiff Submitted A Claim Under Their "All-Risk" Policies, and Defendant Wrongly Fails and Refuses To Honor Its Obligations Respecting Same**

45. As a result of the orders governing Plaintiff's business, Plaintiff's business closed on March 16, 2020. The business was re-opened on June 5, 2020, but only at 50% capacity, pursuant to ongoing government-ordered restrictions.

46. The business was again ordered to close on July 10, 2020. The business was re-opened on July 24, 2020, but only at 25% capacity, pursuant to ongoing government-ordered restrictions.

47. Plaintiff has incurred, and will continue to incur, among other things, substantial losses of business income and additional expenses covered under the Policy.

48. On April 17, 2020, Plaintiff provided written notice to Defendant of its claim for the interruption to its business.

49. By letter dated April 21, 2020, Defendant has refused to provide coverage for Plaintiff's claims. The denial letter is attached hereto as **Exhibit B**.

---

[11] https://www.cdc.gov/coronavirus/2019-ncov/php/public-health-recommendations.html
[12] https://www.healthline.com/health-news/what-a-covid-19-wave-in-the-fall-could-look-like#Educated-guesses-about-the-future

**Plaintiff's Losses Arise From Direct Physical Loss Or Damage**

50. Plaintiff's Covered Property suffered "direct physical loss or damage" due to the Governor of Pennsylvania's Order, and other local government orders mandating that Plaintiff discontinue its primary use of the Covered Property. The Pennsylvania Governor's Orders, in and of themselves, constitute a peril insured against within the meaning of the Policies.

51. Alternatively, and to the extent the Orders do not constitute a peril insured against within the meaning of the Policy, the COVID-19 pandemic and the ubiquitous nature of the COVID-19 virus caused a direct physical loss of or damage to Plaintiff's Covered Property. Specifically, the Covered Property has been rendered unusable for its intended purposes because the highly contagious nature of the COVID-19, particularly when people gather inside a building or other closed space for extended periods of time, precludes any meaningful use of the Covered Property.

52. Further, and as an additional basis for coverage under the Policy, the governmental shutdown orders or, alternatively, the ubiquitous nature of the COVID-19 virus, as explained above, caused direct physical loss of or damage to property other than Plaintiff's Covered Property, and such loss or damage resulted in an "action by civil authority" prohibiting access to Plaintiff's Covered Property, within the meaning of the Policy.

**CLASS ACTION ALLEGATIONS**

53. Plaintiff brings this action individually and as a class action on behalf of the following class (collectively, the "Class"), pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All policy holders in the United States who purchased commercial property coverage, including income protection (and extra expense) coverage from Defendant and who have been denied coverage under their policy for lost business income after being ordered by a governmental entity, in response to the COVID-19

pandemic, to shut down or otherwise curtail or limit in any way their business operations.

54. Excluded from the Class are Defendant and its officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

55. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

56. The requirements of Rule 23(a)(1) have been met. The members of the Class are so numerous that joinder would be impracticable. Class members are readily identifiable from information and records in Defendant's possession, custody, or control.

57. The requirements of Rule 23(a)(2) have been met. There is a well-defined community of interest in the common questions of law and fact affecting the Class members. These common legal and factual questions include, but are not limited to:

    a. whether Defendant owed coverage to Plaintiff and the Class;

    b. whether any exclusions to coverage apply;

    c. whether Plaintiff and members of the Class are entitled to damages and, if so, the measure of such damages; and

    d. whether Plaintiff and members of the Class are entitled to equitable, declaratory and/or other relief, and if so, the nature of such relief.

58. The requirements of Rule 23(a)(3) have been met. Plaintiff's claims are typical of the claims of the absent class members and have a common origin and basis. Plaintiff and absent Class members are all injured by Defendant's refusal to afford the purchased coverage. Plaintiff's claims arise from the same practices and course of conduct giving rise to the claims of the absent

Class members and are based on the same legal theories, namely the refusal to provide insurance coverage for the loss. If prosecuted individually, the claims of each Class member would necessarily rely upon the same material facts and legal theories and seek the same relief. Plaintiff's claims arise from the same practices and course of conduct that give rise to the other Class members' claims and are based on the same legal theories.

59. The requirements of Rule 23(a)(4) have been met. Plaintiff will fully and adequately assert and protect the interests of the absent Class members and have retained Class counsel who are experienced and qualified in prosecuting class action cases similar to this one. Neither Plaintiff nor Plaintiff's attorneys have any interests contrary to or conflicting with the interests of absent Class members.

60. Class certification of Plaintiff's claims is also appropriate pursuant to Rule 23(b)(3). The questions of law and fact common to all Class members predominate over any questions affecting only individual class members.

61. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the absent Class members' claims is economically infeasible and procedurally impracticable. Class members share the same factual and legal issues and litigating the claims together will prevent varying, inconsistent, or contradictory judgments, and will prevent delay and expense to all parties and the court system through litigating multiple trials on the same legal and factual issues. Class treatment will also permit Class members to litigate their claims where it would otherwise be too expensive or inefficient to do so. Plaintiff knows of no difficulties in managing this action that would preclude its maintenance as a class action.

62. Additionally, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other Class members and impair their interests. Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making declaratory relief appropriate to the Class as a whole.

## COUNT I

### DECLARATORY RELIEF

63. Plaintiff incorporates by reference each and every allegation set forth above.

64. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). !

65. An actual controversy has arisen between Plaintiff and Defendant as to the rights, duties, responsibilities and obligations of the parties in that Plaintiff contends and Defendant disputes and denies that the Policy provide coverage to Plaintiff for any current and future lost business income, subject to the limit of liability, for the temporary suspension of Plaintiff's operations.

66. Plaintiff continues to suffer injury and are at risk of future loss as a result of Defendant's failure to abide by its coverage obligation under the Policy.  The July 15, 2020 Executive Order by Governor Wolf in Pennsylvania demonstrates the risk of future loss to Plaintiff.  Plaintiff's business remains limited to serving customers at a 25% capacity, pursuant to ongoing government-ordered restrictions, as the number of COVID-19 cases continues to rise.

Furthermore, the mere occurrence of the COVID-19 virus in the United States in 2020 demonstrates the future risk that Plaintiff could suffer property loss as a result of another widespread virus and related government shutdown orders.

67. The Policy provides coverage for "direct physical loss of or damage to" the Covered Property.

68. Plaintiff's loss of use, loss of access, and loss of functionality of the Covered Property when government orders made it unlawful for Plaintiff to fully access, use, and operate its businesses at the Covered Property, constitute a direct physical loss of the Covered Property under the Policy. Alternatively, the ubiquitous nature of the COVID-19 virus caused direct physical loss or damage to the Covered Property by preventing Plaintiff from using the Covered Property for its intended purpose.

69. Additionally, the government shutdown orders or, alternatively, the ubiquitous nature of the COVID-19 virus, caused direct physical loss or damage to property other than the Covered Property, thereby invoking coverage under the Policy's "Civil Authority" provision for "actual loss of 'income' and/or 'rental income' . . . caused by action of civil authority that prohibits access to the premises described."

70. The Policy constitutes valid and binding agreements obligating the Defendant to indemnify Plaintiff for covered losses.

71. Plaintiff has substantially performed or otherwise satisfied all conditions precedent to bringing this action and obtaining coverage pursuant to the Policy and applicable law, or alternatively, Plaintiff has been excused from performance by Defendant's acts, representations, conduct, or omissions.

72. Defendant has failed to indemnify Plaintiff for its covered losses.

73. No exclusion to coverage applies.

74. Plaintiff has suffered and continue to suffer covered losses under the Policy.

75. Plaintiff, individually and on behalf of the Class, seeks a Declaratory Judgment that there is coverage for their business interruption losses under the Policy.

## COUNT II

### BREACH OF CONTRACT

76. Plaintiff incorporates by reference Paragraphs 1 through 61 as if fully set forth herein.

77. Plaintiff and Defendant entered into a contract of insurance; here, the Policy.

78. The Class members entered into substantially identical policies with Defendant.

79. Under the Policy, Defendant agreed to indemnify Plaintiff and the Class for their business losses as a result of covered losses.

80. Plaintiff and the Class members suffered covered losses under the Policy.

81. Plaintiff and the Class members timely submitted notices of claims and satisfied all conditions precedent to receiving the coverage they purchased from Defendant.

82. Defendant breached its contracts with Plaintiff and the Class members by failing and refusing to provide the contracted-for coverage.

83. Defendant's breach of the contracts has caused Plaintiff and the Class to suffer damages in the amount of their unreimbursed business losses or their limits of liability, whichever is lower.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff herein prays as follows, on behalf of itself and all other similarly situated:

1) For a declaration that there is coverage under the Policy for the interruption to

Plaintiff's business and the associated business income lost therefrom;

    2)      For damages, costs and attorney's fees; and

    3)      For such other relief as the Court may deem proper.

### **DEMAND FOR TRIAL BY JURY**

Pursuant to the Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Date:   August 20, 2020

                              Respectfully submitted,

                              Gary F. Lynch (Pa. ID 56887)
                              R. Bruce Carlson (Pa. ID 56657)
                              Kelly K. Iverson (Pa. ID 307175)
                              **CARLSON LYNCH LLP**
                              1133 Penn Avenue, 5th Floor
                              Pittsburgh, PA 15222
                              T: 412-322-9243
                              F: 412-231-0246
                              glynch@carlsonlynch.com
                              bcarlson@carlsonlynch.com
                              kiverson@carlsonlynch.com